IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF MISSOURI

CENTRAL DIVISION

DESIGNWORKS HOMES, INC., et al.,

    Plaintiffs,

  v.

SUSAN HORAK, et al.,

    Defendants.

**Oral Argument Requested**

Case No. 2:18-CV-04093-BCW

**PLAINTIFFS' SUPPLEMENTAL SUGGESTIONS IN OPPOSITION**

**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ON THE AFFIRMATIVE DEFENSE OF FAIR USE**[1]

---

[1] In these Supplemental Suggestions, docket entries are cited as "Dkt." followed by the docket number. Docket entries and other court materials (such as the cert petition and cert-stage *amicus* briefs) are cited with the first page of the document as "1" regardless of the document's internal pagination, and so on. Unless otherwise indicated, all emphasis and brackets are supplied. Likewise, internal quotations are usually omitted for the ease of reading. All statutory citations are to Title 17 of United States Code, unless otherwise indicated.

1

# CONTENTS

TABLE OF AUTHORITIES .................................................................................................... 4

ARGUMENT .......................................................................................................................... 6

    I.   THREE KEY FACTS MAKE THIS USE ESPECIALLY UNFAIR. ................................................. 6

        A.  Defendants made no attempt to limit the harm to the architect's rights. ...................... 6

        B.  Defendants kept infringing for years when the houses were not listed for sale. .......... 7

        C.  Defendants do not show that the homeowners approved their uses. ............................ 7

    II.  THE BURDEN OF PROOF AND PROCEDURAL POSTURE SUPPORT PLAINTIFFS. ........................ 7

    III. DEFENDANTS' INFRINGEMENTS ARE NOT FAIR USE. ............................................................ 8

        A.  The four factors listed in the statute show that this use is unfair. ................................ 8

            i.    Factor 1: Commercial, non-transformative, superseding use ............................ 8

            ii.   Factor 2: Unpublished, award-winning architectural design ............................ 8

            iii.  Factor 3: Wholesale copying ............................................................................ 8

            iv.  Factor 4: Significant market harm ..................................................................... 9

        B.  Additional factors further demonstrate that this use is especially unfair. ...................... 9

            i.    Notification: No attempt to contact the rightsholder or ask permission ........... 9

            ii.   Attribution: No credit to the designer ............................................................... 9

            iii.  Privacy: Harms to homeowner privacy ............................................................ 9

            iv.  Proportionality: No attempt to limit the use .................................................... 10

            v.   Section 120: Exceeded separate codified defense. .......................................... 10

            vi.  Facilitates Infringement: Online distribution to would-be infringers ............. 10

        C.  When weighed, the factors show that Defendants' uses were decidedly unfair. ......... 10

CONCLUSION ............................................................................................................................. 11

CERTIFICATE OF SERVICE ................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,
 11 F.4th 26 (2d Cir. 2021). ................................................................................................. 10

Brammer v. Violent Hues Prods., LLC,
 922 F.3d 255 (4th Cir. 2019). ................................................................................................ 8

Calvit v. Minneapolis Pub. Sch.,
 122 F.3d 1112 (8th Cir. 1997). .............................................................................................. 7

Dr. Seuss Enters., L.P. v. ComicMix LLC,
 983 F.3d 443 (9th Cir. 2020). ...................................................................................... 7, 9, 10

Georgia v. Public.Resource.Org, Inc.,
 140 S. Ct. 1498 (2020). .......................................................................................................... 6

Harper & Row, Publrs. v. Nation Enters.,
 471 U.S. 539 (1985). .............................................................................................................. 9

Los Angeles News Serv. v. KCAL-TV Channel 9,
 108 F.3d 1119 (9th Cir. 1997). .............................................................................................. 9

Marano v. Metro. Museum of Art,
 844 Fed. App'x 436 (2d Cir. Apr. 2, 2021). ......................................................................... 10

Marcus v. Shirley Rowley an Diego Unified Sch. Dist.,
 695 F.2d 1171 (9th Cir. 1983). .............................................................................................. 9

McGucken v. Newsweek LLC,
 2022 U.S. Dist. LEXIS 50231 (S.D.N.Y. Mar. 21, 2022). .................................................. 6, 9

McGucken v. Pub Ocean,
 2021 U.S. Dist. LEXIS 153361 (C.D. Cal. July 27, 2021). ................................................... 8

Midlevelu, Inc. v. ACI Info. Grp.,

   989 F.3d 1205 (11th Cir. 2021). ................................................................................ 8

Monge v. Maya Magazines, Inc.,

   688 F.3d 1164 (9th Cir. 2012). ............................................................................... 10

Monsarrat v. Newman,

   28 F.4th 314 (1st Cir. 2022). .................................................................................. 10

New Era Publ'ns Int'l, ApS v. Henry Holt & Co.,

   695 F. Supp. 1493 (S.D.N.Y. 1988). ..................................................................... 10

Nunez v. Caribbean Int'l News Corp.,

   235 F.3d 18 (1st Cir. 2000). ..................................................................................... 9

O'Neil v. Ratajkowski,

   563 F. Supp. 3d 112 (S.D.N.Y. 2021). .................................................................. 10

Sinclair v. Am. Media, Inc.,

   2018 U.S. Dist. LEXIS 154116 (S.D.N.Y. Sept. 7, 2018). .................................... 10

Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n,

   953 F.3d 638 (9th Cir. 2020). .................................................................................. 6

Wood v. Oberserver Holdings, LLC,

   2021 U.S. Dist. LEXIS 127484 (S.D.N.Y. July 8, 2021). ....................................... 8

**Statutes**

17 U.S.C. § 107. ................................................................................................................ 8

17 U.S.C. § 108. .............................................................................................................. 10

## ARGUMENT

Some fair use cases are easy. For example, the Eighth Circuit wisely suggested that fair use would obviously apply if a copyright holder was so outrageous as to sue "*__homeowners__*" or "*__children__*" for drawing floor plans of "their *__own__* homes." See id. at 810-811. Emphatically, there are *__no__* homeowners—or children—being sued here. Cf. Dkt. 60 at 6. And, what this Court says on fair use as to *__realtors__* has little-to-no implications for fair uses by homeowners—because fair use is "*__notoriously fact sensitive__*" and a suit against homeowners would be different facts. See Georgia v. Public.Resource.Org, Inc., 140 S. Ct. 1498, 1513 (2020).[2]

The facts *__here__* are that Defendants are seeking a massive and unfair incursion into the rights of others. Thus, this case is an easy case against fair use. Defendants (1) wholesale copied Plaintiffs' proprietary, award-winning architectural designs; (2) globally distributed them online without limitation, for profit; (3) left them up for years *after* the homes were listed for sale; and (4) paid others for the copies but *neither* asked the architect for permission *nor* offered him a penny. That's not fair—and it's not fair use. Accordingly, this Court should deny summary judgment on the affirmative defense of fair use.

### I. THREE KEY FACTS MAKE THIS USE ESPECIALLY UNFAIR.

For fair use, courts don't paint with a broad brush. Instead, they hew closely to the facts because fair use is a "*context-sensitive inquiry*." E.g., McGucken v. Newsweek LLC, 2022 U.S. Dist. LEXIS 50231, *24 (S.D.N.Y. Mar. 21, 2022). Here, three facts are key.

#### A. Defendants made no attempt to limit the harm to the architect's rights.

Defendants made no attempt to limit their online distribution of the floor plans. Instead, they adopted an approach of maximal, unfettered distribution: they "posted [the floor plans] on the internet with the Multiple Listing Service[,]" Dkt. 59 at 2; and then exported it to various well-

---

[2] If such outrageous-but-unlikely claims against homeowners or children ever arose, Congress has given the judiciary all the tools it needs to dispose of such claims and to deter them. See, e.g., Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n, 953 F.3d 638 (9th Cir. 2020) (awarding copyright fee-shifting for "objectively *un*reasonable" music-copyright claims brought against a high school's "music education program").

known web sites like Realtor.com where it could be viewed anyone without limit; " Dkt. 62-1 at 3 ¶ 10; and permitted the free download by anyone—including those who might want to copy plans, steal the architect's ideas, or dox a homeowner.  In short, Defendants made *no attempt to limit the harm to the architect's interest of that online posting*—such as by privately emailing the floor plans to interested buyers; protecting the plans behind a password; or merely requiring a (free) login onto their site to view the architect's plans.  Instead, Defendants opted for the most unfair approach.

### B. Defendants kept infringing for years when the houses were not listed for sale.

Defendants listed the house for sale and posted the plans online in 2010.  Dkt. 60-10 at 2 ¶ 5.  Yet, even *after* the home was no longer listed for sale, Defendants left the plans up *for years*.  Dkt. 60 at 6 ("eight years" later (emphasis in original).  This case is *not* about home sales, but about floor plans left up for years afterward, for little apparent social benefit and in complete disregard for the architect's rights.  See Cert Pet. 15 ("8 years *after* the listing").  Leaving the floor plans up after no homeowner is trying to sell is especially unfair and unreasonable.

### C. Defendants do not show that the homeowners approved their uses.

Defendants say they had homeowner "consent[.]"  Dkt. 60 at 9 ¶ 17; Dkt. 60-10 at 1 ¶ 4.  Their evidence doesn't support that view.  Defendants had consent to "***measure***" the house.  Dkt. 60-10 at 1 ¶ 4.  Homeowner consent to *measure* a house is **not** consent to *globally distribute the floor plans* online, for years, without limit, to anyone, even after the sale has ended.

## II. THE BURDEN OF PROOF AND PROCEDURAL POSTURE SUPPORT PLAINTIFFS.

Defendants are (1) the *movants* for *summary judgment* (2) on fair use, an *affirmative defense*.  There are two procedural implications.  **First**, "the Supreme Court […] ha[s] unequivocally placed the *burden of proof* on the proponent of the affirmative defense of fair use"— *i.e.*, *on Defendants*.  E.g., Dr. Seuss Enters., L.P. v. ComicMix LLC, 983 F.3d 443, 459 (9th Cir. 2020).  **Second**, as the non-movants here, Plaintiffs are entitled to "reasonable inference[s]" in their favor.  E.g., Calvit v. Minneapolis Pub. Sch., 122 F.3d 1112, 1116 (8th Cir. 1997).

7

### III.  DEFENDANTS' INFRINGEMENTS ARE NOT FAIR USE.

The enumerated fair use factors, see Section III.A, *infra*, and unenumerated factors, see Section III.B, *infra*, show that Defendants' uses are *not* fair uses, see Section III.C, *infra*.

### A. The four factors listed in the statute show that this use is unfair.
#### i. *Factor 1: Commercial, non-transformative, superseding use*

The purpose and character of this use is **commercial, non-transformative, superseding use**. §107(1). Defendants concede their use was commercial. Dkt. 60 at 31 ("Commercial use"). They're right: marketing "to attract potential customers" *is* "commercial." Midlevelu, Inc. v. ACI Info. Grp., 989 F.3d 1205, 1222 (11th Cir. 2021). It's not transformative either. The design of the house was "*not* aesthetically transformed[.]" See Wood v. Oberserver Holdings, LLC, 2021 U.S. Dist. LEXIS 127484, *7 (S.D.N.Y. July 8, 2021). The online posting of floor plans "communicates nothing new or different" in "their use in the real estate marketing materials: **they show the house**." See id. Merely posting them online or conveying "information" about the house isn't transformative. See Brammer v. Violent Hues Prods., LLC, 922 F.3d 255, 264 (4th Cir. 2019). Instead, it's superseding: their infringements "obviate any need" for anyone to ever seek to license Plaintiffs' plans, so Defendants' uses superseded the use of the originals.

#### ii. *Factor 2: Unpublished, award-winning architectural design*

Plaintiffs' award-winning, Dkt. 60-1 at 16 (p. 60:4-5), and "unique home design[,]" Dkt. 62-1 at 1 ¶ 3, is a creative work "afforded '**maximal protection**[,]'" see Midlevelu, 989 F.3d at 1222. Also, Plaintiffs' plans have never been published, see §101 (defining "Publication")—a "key" factor "tending to *negate a defense of fair use*[,]" McGucken v. Pub Ocean, 2021 U.S. Dist. LEXIS 153361, *11 (C.D. Cal. July 27, 2021) (quoting Harper & Row, 471 U.S. at 554).

#### iii. *Factor 3: Wholesale copying*

This is wholesale copying, which "militates against a finding of fair use." Midlevelu, 989 F.3d at 1223; compare Dkt. 60-3 at 1 (infringing plans) with Dkt. 60-6 (original). What Defendants posted gives "accurate or nearly accurate dimensions and space configuration" of Plaintiffs' designs. Dkt. 62-1 at 3 ¶ 12. None of this was necessary: homes readily sell without

8

posting floor plans online. In fact, less than 1% of realtors post them online without limitation. Move Amicus 18, 25 (over "8,500,000 listings" on Realtor.com but only "65,000" use floor plans in a measured timeframe). Floor plans might be useful, desirable, and valuable for selling homes but they're *not **necessary*** to sell homes.

### iv. *Factor 4: Significant market harm*

Defendants say there is "no evidence" of market harm. Dkt. 60 at 30-31. They forget *they* bear the burden of proof. And, there *is* evidence of harm: their use is a superseding use that limits licensing value by fully disclosing the plans online. McGucken, 2022 U.S. Dist. LEXIS 50231 at *33. ("competing substitute for the original" weighs against fair use); see cert-stage *amicus* briefs (large markets for online floor plans).

### B. Additional factors further demonstrate that this use is especially unfair.

Fair use "requires a case-by-case determination" especially because the four statutory factors are "**nonexclusive**." Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 549 (1985). Here, *six* case-specific factors also weigh against fair use.

### i. *Notification: No attempt to contact the rightsholder or ask permission*

Here, Defendants' use might "have been obtained for a fee" but they didn't ask. See Los Angeles News Serv. v. KCAL-TV Channel 9, 108 F.3d 1119, 1122 (9th Cir. 1997). "The bottom line is that [Defendants] created, **without seeking permission or a license**," a massive impairment of Plaintiffs' rights. ComicMix, 983 F.3d at 461. That's unfair.

### ii. *Attribution: No credit to the designer*

Here, "there was no attempt by [D]efendant[s] [...] to credit [P]laintiff[s]" with attribution. Marcus v. Shirley Rowley an Diego Unified Sch. Dist., 695 F.2d 1171, 1176 (9th Cir. 1983). This "**failure to acknowledge counts against**" fair use. See Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 23 (1st Cir. 2000).

### iii. *Privacy: Harms to homeowner privacy*

For fair use, "privacy interests may be an appropriate consideration"—especially where the work is "highly personal, private, and intimate[.]" New Era Publ'ns Int'l, ApS v. Henry Holt

9

& Co., 695 F. Supp. 1493, 1505 (S.D.N.Y. 1988). Leaving plans online for years when no home is listed for sale creates safety risks and privacy harms for homeowners, *e.g.*, doxing.

          iv.    *Proportionality: No attempt to limit the use*

Fair use requires that copyrighted material be used "in a **reasonable manner**[.]" Monsarrat v. Newman, 28 F.4th 314, 321 (1st Cir. 2022). Defendants did not password protect the displays or limit online distribution **in any manner**. See Section I.A, *supra*. That's unfair too.

          v.    *Section 120: Exceeded separate codified defense.*

Where Congress wants to indicate that a failure to meet one of the codified defenses in §§108-122 has no impact on the fair use analysis, Congress does so expressly through a savings clause. E.g., §108(f)(4). Section 120 has no such savings clause and, as a result, Defendants' proximity to §120(a) but failure to meet it weighs against fair use.

          vi.    *Facilitates Infringement: Online distribution to would-be infringers*

"[U]nrestricted and widespread reproduction" of copyrighted works "create[s] incentives to pirate intellectual property." Monge v. Maya Magazines, Inc., 688 F.3d 1164, 1182 (9th Cir. 2012). Defendants unfettered global distribution that facilitates infringement is also unfair.

**C.    When weighed, the factors show that Defendants' uses were decidedly unfair.**

The fair use factors must be "weighed together, *in light of the purposes of copyright, namely to promote progress in science and art*." Marano v. Metro. Museum of Art, 844 Fed. App'x 436, 438 (2d Cir. Apr. 2, 2021). Fair use must "uphold **copyright law's ultimate purpose**[.]" O'Neil v. Ratajkowski, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021). Fair use exists to protect "the very **creativity** which [copyright] law is designed to foster." ComicMix, 983 F.3d at 451. "The fair use doctrine is **not a license for corporate theft**" even when "the underlying work contains material of possible public importance." Sinclair v. Am. Media, Inc., 2018 U.S. Dist. LEXIS 154116, *12 (S.D.N.Y. Sept. 7, 2018). Rather, copyright law "insist[s] that, just as artists must pay for their paint, canvas, [etc.]" Defendants "must pay for" floor plans that they want to use as raw materials in their business. See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 52 (2d Cir. 2021).

10

## CONCLUSION

Defendants' unauthorized uses do **not** advance the field of architecture. In fact, their uses do not advance *any* field of the arts or sciences. Simply put, Defendants' uses do not serve *any copyright purpose* whatsoever. Rather, their uses constitute commercial, non-transformative, superseding, and wholesale copying of an unpublished, award-winning home design. Worse, Defendants displayed such proprietary designs globally, online, without limitation, for years, long after a home was listed, without attribution, without notification, and without even modest payment. That's not a fair use—it's a fundamentally *un*fair use. This Court should deny Defendants' motion for summary judgment.

Date: July 13, 2022

Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska
Phone: (531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Designworks Homes, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via this Court's CM/ECF system to other counsel of record.

DATED: July 13, 2022          Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm