IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DESIGNWORKS HOMES, INC., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:18-CV-04093-BCW |
| SUSAN HORAK, doing business as The Susan Horak Group Re/Max Boone Realty, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is, on remand from the Court of Appeals for the Eighth Circuit, Defendants' Motion for Summary Judgment (Doc. #59) and Plaintiffs' Supplemental Motion for Summary Judgment (Doc. #119). The Court, being duly advised of the premises, grants Defendants' motion and denies Plaintiffs' motion on the basis of fair use.

## BACKGROUND

On December 17, 2019, this Court granted Defendants' motion for summary judgment on Plaintiffs' complaint alleging (I) copyright infringement; (II) contributory copyright infringement; (III) vicarious infringement; and (IV) violation of the Visual Artists Rights Act, 17 U.S.C. § 106A (VARA). (Doc. #79). Plaintiffs' claims stem from their copyright interests in an original expression home configuration, embodied in a residential structure that Defendants were hired to market and sell.

In its original Order, the Court found Defendants entitled to summary judgment on Count I because Plaintiffs did not show access for purposes of their copyright infringement claim as to the Chilton Registration and/or the Never Built Registration. (Doc. #79). The Court also found

1

Defendants entitled to summary judgment as to the Melrose Registration under 17 U.S.C. § 120(a) (excluding pictorial representation of architectural works from copyright protection). The Court further found Defendants entitled to summary judgment on Count II and III alleging secondary copyright infringement because the Court granted summary judgment for Defendants on Count I. Finally, the Court granted Defendants' motion for summary judgment as to Count IV that the Design, as incorporated into the structures at 4804 Chilton and 4306 Melrose, was not protected by VARA. (Doc. #79).

Plaintiffs appealed the Court's Order. On August 16, 2021, the Court of Appeals for the Eighth Circuit reversed this Court's decision granting summary judgment for Defendants under § 120(a). The Eighth Circuit stated:

> [i]n sum, we hold that § 120(a) does not provide a defense to copyright infringement to real estate companies, their agents, and their contractors when they generate and publish floorplans of homes they list for sale. Our decision does not preclude the district court on remand from considering whether some other defense might apply or whether the plaintiffs have demonstrated a claim of copyright infringement in the first place.

(Doc. #100-3 at 13). The Eighth Circuit issued its mandate on October 13, 2021 (Doc. #108).

On November 2, 2021 and December 10, 2021, this Court held status conferences with the parties to determine how this matter would proceed after reversal and remand of the summary judgment Order. On December 10, 2021, the Court entered an Order denying Plaintiffs' oral motion to re-open discovery, granting in part Plaintiffs' motion for supplemental briefing, and staying the matter, pending a decision from the Supreme Court of the United States on Defendants' petition for writ of certiorari. (Doc. #114). The Supreme Court denied Defendants' petition for cert on June 27, 2022, and the parties filed supplemental briefing in this Court on the affirmative defense of fair use. (Docs. #115, #119, #121).

2

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden to establish both that there exists no genuine issue of material fact and entitlement to judgment as a matter of law. Celotex, 477 U.S. at 323. For purposes of summary judgment, the non-moving party is entitled to the benefit of all reasonable factual inferences. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

## UNCONTROVERTED FACTS[1]

In 1996, Plaintiffs Designworks Homes, Inc. and its sole shareholder Charles Lawrence James ("Plaintiffs") designed and constructed a home at 4306 Melrose Drive in Columbia, Missouri, using a "triangular atrium design with stairs" (hereinafter, "the Design"). The structure's main floor occupied 2,227 square feet. Between 1996 and 2001, Plaintiffs used the Design in at least 4 other residential builds, including for a residence constructed at 4804 Chilton Court in Columbia, Missouri.

The structure located at 4306 Melrose sits on and is visible from a public street. Both the structure at 4306 Melrose and the structure at 4804 Chilton use the Design. However, there are several differences between the two structures, including the arrangement and placement of the bedrooms, the setup of the stairs, the shape of the great rooms, the garage size, the location of the laundry room, the location and design elements of the master bedroom, the location of the main-level half bathroom, as well as other differences. (Doc. #60 at 11-13).

---

[1] The Court denied Plaintiffs' motion to re-open discovery on remand. Therefore, the uncontroverted material facts remain unchanged from those set forth in the Court's initial ruling. (Doc. #79).

In 2010, Defendant Susan Horak was hired to list for sale the home at 4306 Melrose. As part of the marketing materials for the real estate listing, Horak made and/or caused to be made and/or to be published a drawing of the layout for the interior main and lower levels of 4306 Melrose. Horak used a tape measure to measure the interior rooms of the structure and drew the floorplan on graph paper ("the Floorplan"). Horak measured the main floor to occupy 2,341 square feet. Defendants used the Floorplan in their marketing materials for the home at 4306 Melrose.

In 2017, Plaintiffs discovered the Floorplan for 4306 Melrose published online. While Defendants had access to the interior of 4306 Melrose, there is no evidence Defendants had access to any architectural drawings of 4306 Melrose, 4804 Chilton, or any other architectural drawings that used the Design. Additionally, there is no evidence Defendants had access to the interior of 4804 Chilton, or apart from 4306 Melrose, any other structure that used the Design. Finally, there is no evidence Defendants drafted any architectural plans or any construction based on the Floorplan.

Plaintiffs' claims relate to the following asserted copyrights to the Design:

1. Copyright for plans and drawings for 4306 Melrose

2. Copyright for the completed structure for 4306 Melrose

3. Copyright Registration No. VAu623-402 ("Chilton Registration")
    a. Title: Atrium ranch on walk-out; Angular atrium ranch
    b. Type: Architectural work
    c. Effective Date: May 10, 2004
    d. Deposit materials: photographs of the interior and exterior structure at 4804 Chilton, and architectural drawings

4. Copyright Registration No. VAu-1-133-136 ("Never Built Registration")
    a. Title: 2,187SF
    b. Type: Architectural work
    c. Effective Date: June 5, 2013
    d. Deposit materials: architectural drawings

5. Copyright Registration No. VAu-1-330-891 ("Melrose Registration")

a. Title: Bedford Walk – 4306 Melrose Drive
b. Type: Work of visual arts
c. Effective Date: April 22, 2018
d. Deposit materials: architectural drawings.

## ANALYSIS

Defendants argue there is no genuine issue of material fact and they are entitled to judgment as a matter of law because the Floorplan does not infringe on Plaintiffs' copyrights in the Design, the Floorplan does not infringe based on § 120(a), and the Floorplan constitutes fair use. (Doc. #59). Because the Court granted summary judgment for Defendants on the issue of copyright infringement based on § 120(a), the Court declined to consider Defendants' other arguments.

In reversing the Court's Order to the extent it was premised on § 120(a), the Eighth Circuit stated:

> [n]othing we say in this opinion is meant to undermine any defense other than the one found in § 120(a). It may be that many of the hypothetical uses that the defendants posit would be protected by some other defense. The fair-use defense immediately comes to mind. See 17 U.S.C. § 107. In fact, the defendants here raised fair use below, but the district court need not reach its potential application because it concluded that § 120(a) applied. We need not resolve that matter because we leave it to the district court on remand to do so in the first instance. Just because we close one door to protection from liability mean that others aren't standing open.

(Doc. #100-3 at 11-12). The Court now considers, with the benefit of the parties' supplemental briefing on the issue (Docs. #119 & #121), whether Defendants are entitled to summary judgment that the Floorplan constitutes fair use of Plaintiffs' copyrights in the Design.

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression," and confers upon the copyright holder exclusive rights to publish, copy and/or distribute the original work. 17 U.S.C. § 102(a); Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547 (1985). A prima facie case of copyright infringement requires a plaintiff to demonstrate: (1) ownership of a valid copyright; and (2) defendant's copying, displaying, or

5

distributing protected elements of the copyrighted work without authorization. Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 1992).

The fair use doctrine is an affirmative defense to copyright infringement, codified in 17 U.S.C. § 107. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994). Fair use "confers a privilege to use copyrighted material in a reasonable manner without the owner's consent." Belmore v. City Pages, Inc., 880 F. Supp. 673, 676 (D. Minn. 1995) (citing Hustler Mag., Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1151 (9th Cir. 1986). "This doctrine is a means of balancing the need to provide individuals with sufficient incentives to create public works with the public's interests in the dissemination of information." Id. at 676-77.

Title 17 U.S.C. § 107 sets forth "Limitations on exclusive rights: Fair use." The statute states in full:

> Notwithstanding the [the exclusive rights held by a copyright owner] the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> **(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> **(2)** the nature of the copyrighted work;
>
> **(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> **(4)** the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107.

Because fair use is an affirmative defense, Defendants bear the burden to prove that the allegedly infringing use was fair. N. Jersey Media Grp., Inc. v. Pirro, 74 F. Supp. 3d 605, 614 (S.D.N.Y. 2015) (citing Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 81 (2d Cir. 2014; NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476-77 (2d Cir. 2004), cert. denied, 543 U.S. 1000 (2004)). However, they need not show that each listed factor weighs in their favor. Id. "Instead, the factors are to be explored, and the results weighed together, in light of the purposes of copyright." Id. (citing Campbell, 510 U.S. at 578). Further, these statutory factors are non-exclusive, and certain considerations may be relevant to more than one factor. Swatch, 756 F.3d at 81; Pirro, 74 F. Supp. 3d at 614. The issue of fair use, though a mixed question of law and fact, may be resolved on summary judgment if the material facts are not in genuine dispute. Pirro, 74 F. Supp. 3d at 614; Harper & Row, 471 U.S. at 560.

Defendants argue there is no genuine issue and they are entitled to judgment as a matter of law on Plaintiffs' claims for copyright infringement because the Floorplan constitutes fair use under § 107. As to the first statutory factor, Defendants argue the Floorplan's use was transformative of the Design, the type of commercial use at issue favors a finding of fair use, and Defendants acted in good faith. As to the second statutory factor, Defendants argue the nature of the Design favors a finding of fair use. As to the third statutory factor, Defendants argue the Floorplan used a minimal and insubstantial portion of the Design. As to the fourth statutory factor, Defendants argue the Floorplan does not affect the potential market value of the Design. (Doc. #121).

In opposition, Plaintiffs argue the Floorplan does not constitute fair use. As to the first statutory factor, Plaintiffs argue the Floorplan's use was indisputably commercial in nature, as well as non-transformative. As to the second statutory factor, Plaintiffs argue the Design is entitled to

7

"maximal" copyright protection because it is an unpublished, award-winning, creative work. As to the third statutory factor, Plaintiffs argue the Floorplan represents "wholesale copying." As to the fourth statutory factor, Plaintiffs argue the Floorplan is a superseding use that limits the licensing value of the Design. Plaintiffs also assert other factors weigh against a finding of fair use: (a) Defendants made no attempt to obtain permission for use of the Design or to attribute the Design to Plaintiffs; (b) Defendants made no attempt to limit Plaintiffs' harm even after the sale of 4306 Melrose; (c) publicly available interior home layouts present a privacy issue for homeowners; and (d) the record does not demonstrate the homeowners' consent to the publication of the Floorplan. (Doc. #119).

**A. Purpose and character of the Floorplan's use**

Defendants argue the purpose and character of the Floorplan's use was transformative of the Design, the type of commercial use at issue here supports a finding of fair use, and Defendants' good faith supports a finding of fair use. In opposition, Plaintiffs argue the Floorplan was a "commercial, non-transformative, superseding" use of Plaintiffs' copyrighted material, which is not fair use.

**1. The Floorplan's use is transformative.**

The "purpose and character" factor of § 107, "which addresses the manner in which the copied work is used, is the heart of the fair use inquiry." Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013) (citing Blanch v. Koons, 467 F.3d 244, 249-50 (2d Cir. 2006)). This factor asks "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Pirro, 74 F. Supp. 3d at 614; Campbell, 510 U.S. at 579.

8

"Added value or utility is not the test: a transformative work is one that serves a new and different function from the original work and is not a substitute for it." Authors Guild, Inc. v. Hathitrust, 755 F.3d 87, 96 (2d Cir. 2014). "[E]ven making an exact copy of a work may be transformative so long as the copy serves a different function than the original work." Kennedy v. Gish, Sherwood & Friends, Inc., 143 F. Supp. 3d 898, 910 (E.D. Mo. 2015) (citing Kelly v. Arriba Soft Corp., 336 F.3d 811, 818-19 (9th Cir. 2003) (small, low-resolution reproductions of copyrighted photographs transformative because the reproductions "improv[ed] access to information on the internet versus [the original photograph's purpose of] artistic expression").

Under the uncontroverted facts, Defendants only had access to the structure at 4306 Melrose, and the copying that occurred involved Defendants' measuring of the interior layout and transposing the interior layout onto graph paper. There is no dispute Defendants had no other access to structures where the Design was used, nor Plaintiffs' architectural drawings prepared for use in the construction of 4306 Melrose or elsewhere.

The Floorplan is a two-dimensional floorplan, drawn from a three-dimensional structure. While Plaintiffs' copyright in the Design as an architectural work includes drawings, there is no dispute Defendants did not have access to those drawings. 17 U.S.C. § 102(a)(8); § 101 (architectural work is "the design of a building as embodied in a tangible medium of expression, including a building, architectural plans, or drawings"). Therefore, any infringement arises only from Defendants' access to 4306 Melrose.

The 2-D Floorplan is thus transformative of the 3-D structure embodying the Design. The Floorplan's use is functional, informing potential buyers of the interior layout of 4306 Melrose. Conversely, the Design's use is artistic and/or structural for a residential home for someone to live in. The Floorplan does not supersede the structure incorporating the Design at 4306 Melrose and

9

it is not a substitute for the completed construction. Authors Guild v. Google, Inc., 804 F.3d 202, 223 (2d Cir. 2015).

The Floorplan's use is also transformative of the 3-D structure at 4306 Melrose because it represents only a small portion of the structure embodying the Design. Similarly, the drawings for the interior layout at 4306 Melrose are only a small portion of the material required for a home construction. There is no dispute Defendants did not attempt to construct anything from the Floorplan, and much more architectural expertise would be necessary to replicate the Design embodied in the structure at 4306 Melrose, even if the Floorplan provided the dimensions for the interior layout.

Additionally, the Floorplan's use is transformative of the Design because its purpose is the sale of 4306 Melrose by the homeowners. Defendants did not copy and publicize the Design to reduce the Design's marketability. Rather, the purpose of the Floorplan was to provide information to prospective homebuyers of the interior layout of 4306 Melrose. Defendants were hired by the homeowners to market and sell the house and the Floorplan was part of those efforts.

Even if the Floorplan reflects the interior layout of 4306 Melrose just as Plaintiffs' drawings reflect the interior layout, the Floorplan's use is to inform the home-buying public, while Plaintiffs' drawings contribute to the completed structure embodying the Design. Further, the Floorplan is one aspect of Defendants' marketing efforts for the sale of 4306 Melrose – photos, an internet listing, and brochure describing the residential structure's features were also part of Defendants' marketing efforts to sell the house for the homeowner. Like these other marketing tools, the Floorplan served interests of transparency for potential homebuyers for the structure located at 4306 Melrose, as opposed to serving any interests to overexpose the Design to negatively impact its licensing value. The use of the Floorplan does not overlap with the Design's aesthetic

10

Case 2:18-cv-04093-BCW    Document 124    Filed 09/28/23    Page 10 of 16

use in the marketplace. Indeed, Plaintiffs' interior layout drawings for 4306 Melrose are only part of the architectural plans, making up only part of the copyrightable material, which requires layers of other technical drawings, site plans, foundational layout plans, roof layouts, elevation studies, electrical plans, and other details manifesting as the completed residential construction. The Floorplan's use does not overlap with the Design's use nor its market; therefore, the Floorplan is transformative of the Design, which favors fair use.

### 2. The Floorplan's commercial use supports a finding of fair use.

Section 107's first statutory factor also requires the Court to "consider whether the allegedly infringing work has a commercial . . . purpose." Cariou, 714 F.3d at 708. "This consideration arises when a secondary user makes unauthorized use of copyrighted material to gain profit through copying the original work." Pirro, 74 F. Supp. 3d at 618. The relative importance of the commercial purpose of the allegedly infringing use is "determined on a sliding scale: the more transformative the work, the less important the commercial purpose." Id. Further, the secondary use's commercial purpose may be less important "where the link between the defendant's commercial gain and its copying is attenuated . . . ." Id.

Under the uncontroverted facts, the Floorplan was part of Defendant's marketing materials for 4306 Melrose. Defendants did not sell the Floorplan, nor did they duplicate or sell completed structures. Moreover, the Floorplan conveyed information about 4306 Melrose to the home-buying public. While there is no dispute the Floorplan helped Defendants market 4306 Melrose, Defendants' eventual commission from the sale of the structure embodying the Design has an attenuated relationship to the copying at issue. The Floorplan's commercial use weighs in favor of fair use. This conclusion is consistent with the Court's conclusion as to the Floorplan's transformative use.

### 3. Defendants' good faith supports a finding of fair use.

Section 107's purpose and use factor carries a "subfactor pertaining to defendant's good or bad faith" relative to the copying at issue. NXIVM Corp., 364 F.3d at 478.

The undisputed facts do not suggest Defendants conducted themselves in bad faith. Defendants were hired to market 4306 Melrose for sale in 2010. The effective date for the Melrose Registration is April 2018. The record does not otherwise suggest Defendants' knowledge of Plaintiffs' copyright interest in the Design at the time Defendants made the Floorplan. Defendants' good faith supports a finding of fair use.

### B. Nature of the Design

Defendants argue the nature of the Design supports a finding of fair use because the Design has only thin copyright protection. In opposition, Plaintiffs argue the Design is an award-winning, unique home design "afforded maximal protection" in copyright.

The "nature of the copyrighted work" relates to "the value of the materials used." Campbell, 510 U.S. at 586. "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." Id. Whether a work is unpublished "is a critical element of its nature" and "the scope of fair use is narrower with respect to unpublished works." Harper & Row, 471 U.S. at 564.

Plaintiffs' copyrights in the Design as an architectural work includes the overall form and the arrangement and composition of the spaces, but does not include "individual standard features and architectural elements classifiable as ideas or concepts [that] are not themselves copyrightable. Intervest Constr., Inc. v. Canterbury Est. Homes, Inc., 554 F.3d 914, 919 (11th 2008). An architectural work "closely parallels that of a 'compilation'" of standard elements, arranged in a

12

particular way. Id. Copyright protection in a compilation is "thin." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349 (1991).

Defendants argue that once the unprotectable features of the Design, i.e. kitchen, living room, dining room, bedrooms, windows, doors, and other standard components are excluded, only the triangular atrium remains potentially protectable in copyright. In Sturdza v. United Arab Emirates, the D.C. Circuit found "domes, wind-towers, parapets, arches, and Islamic patterns" to be unprotectable ideas. 281 F.3d 1287, 1297 (D.C. Cir. 2002). The Sturdza court did not, though it could have, included atriums in this list of non-protectable architectural elements. Id. This ruling thus suggests at least the possibility that Plaintiffs' triangular atrium is protectable in copyright as an artistic element which may enjoy more than "thin" copyright protection.

Even so, the nature of the Design overall weighs in favor of a finding of fair use, even if the triangular atrium element gets broader copyright protection as an artistic element. For one thing, Plaintiffs' argument assumes the Floorplan reflects a triangular atrium for the casual observer. The Floorplan depicts the interior layouts of the lower and main floors of the residential structure and there is no dispute the residential structure at 4306 Melrose includes a triangular atrium. Therefore, the Floorplan depicts the triangular atrium, but in a utilitarian and inartistic way. Further, there is no dispute Plaintiffs have used the Design in other constructions, thus reducing its uniqueness, and undercutting Plaintiffs' argument that the Design is unpublished. Even assuming the triangular atrium is entitled to broader copyright protection as an artistic element, it is one part of a compilation of unprotectable elements, such that the nature of the Design factor nonetheless weighs in favor of a finding of fair use.

13

Case 2:18-cv-04093-BCW   Document 124   Filed 09/28/23   Page 13 of 16

### C. Amount and substantiality of the Floorplan versus the Design

Defendants argue the Floorplan copied only a minimal, insubstantial portion of Design. In opposition, Plaintiffs argue the Floorplan is a wholesale copy.

The amount and substantiality factor for fair use asks "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." Pirro, 74 F. Supp. 3d at 620 (citing Campbell, 510 U.S. at 586). "[T]he extent of permissible copying varies with the purpose and character of the use." Campbell, 510 U.S. at 586-57. "The crux of the inquiry is whether no more was taken than necessary." Pirro, 74 F. Supp. 3d at 620 (citing id. at 589).

Plaintiffs' argument is demonstrably unsupported by this record. Under the uncontroverted facts, there is no evidence Defendants otherwise had access to or copied the drawings underlying the Design incorporated into the structure at 4306 Melrose. The copying at issue arose from Defendants' access to the interior of 4306 Melrose. A "wholesale copy" in this context would be a copy of the structure at 4306 Melrose, within which the Design is incorporated. The Floorplan represents the structure's dimensional layout as it exists compared to the completed structure. This copying is minimal and insubstantial when compared to all of the technical drawings and architectural plans underlying the Design.

Further, Defendants took their own measurements of the interior layout as it already existed, which supports the conclusion that Defendants took no more of Plaintiffs' copyrighted material than was necessary for purposes of providing information to the homebuying market about 4306 Melrose's interior layout. This factor weighs in favor of fair use.

### D. Effect on the potential market for the Design

Defendants argue the effect upon the potential market for the sale of the Design weighs in favor of a finding of fair use because the Floorplan is not a substitute for the Design. In opposition,

Plaintiffs argue the Floorplan is a superseding use that limits the licensing value of Plaintiffs' copyrights in the Design.

"[T]he effect of the use upon the potential market for or value of the copyrighted work" is "undoubtedly the single most important element of fair use." Harper & Row, 471 U.S. at 566. This factor evaluates the extent of market harm caused by the alleged infringing use and "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." Campbell, 510 U.S. at 590.

Because the Floorplan is transformative, it is not a substitute for the original work. HathiTrust, 755 F.3d at 99. The Floorplan does not supersede or replace Plaintiffs' architectural work; architectural expertise would be required to replicate the Design. The market for the Floorplan does not overlap with the market for the Design as an artistic expression. This factor tends toward fair use.

The Copyright Act "reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1273 (2023). The fair use doctrine reflects "[t]his balancing act between creativity and availability . . . ." Id.; Hustler, 796 F.2d at 1151 (fair use seeks to balance creative incentives with public interest in dissemination of information). Under the circumstances presented here, the functional nature of the Floorplan in connection with the marketing and sale of the residential structure, at the homeowners' request and with their consent, combined with policy and efficiency interests associated with transparency of real estate transactions, Defendants' Floorplan is fair use and, on the balance, is not an infringement of Plaintiffs' copyrights in the Design.

For all of these reasons, with the Court having also considered the additional factors suggested by Plaintiffs, the Floorplan falls within the doctrine of fair use. Therefore, Defendants' motion for summary judgment is granted on the affirmative defense of fair use as to Count I, and in turn as to Counts II and III. To the extent the Court's analysis in its original Order was not based on § 120(a), the Court incorporates that analysis here, with fair use providing an additional and alternative basis for Defendants' right to judgment as a matter of law. (Doc. #79). Accordingly, it is hereby

ORDERED Defendants' Motion for Summary Judgment (Doc. #59) is GRANTED. It is further

ORDERED Plaintiffs' Supplemental Motion for Summary Judgment (Doc. #119) is DENIED.

IT IS SO ORDERED.

DATED: September 28, 2023 /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT