Designworks Homes, Inc.; Charles Lawrence James

*Plaintiffs - Appellants*

v.

Columbia House of Brokers Realty, Inc., doing business as House of Brokers, Inc., doing business as Jackie Bulgin & Associates; Shannon L. O'Brien; Nicole Waldschlager; Deborah Ann Fisher; John Doe I; Jacqueline Bulgin, doing business as Jackie Bulgin; Carol S. Denninghoff

*Defendants - Appellees*

------------------------------

Kieran Joseph Liebl, Inc., d/b/a Royal Oaks Design, Inc.

*Amicus on Behalf of Appellant(s)*

National Association of Realtors

*Amicus on Behalf of Appellee(s)*

_____

No. 23-3403

_____

Designworks Homes, Inc.; Charles Lawrence James

*Plaintiffs - Appellants*

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 1 of 16
Appellate Case: 23-3402   Page: 1   Date Filed: 01/14/2025 Entry ID: 5474397

v.

Susan Horak, doing business as The Susan Horak Group Re/Max Boone Realty; Boone Group, Ltd., doing business as Re/Max Boone Realty

*Defendants - Appellees*

------------------------------

Kieran Joseph Liebl, Inc., d/b/a Royal Oaks Design, Inc.

*Amicus on Behalf of Appellant(s)*

National Association of Realtors

*Amicus on Behalf of Appellee(s)*
_____

Appeals from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: November 19, 2024
Filed: January 14, 2025
_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.
_____

ARNOLD, Circuit Judge.

    Charles James is a home designer who claims that real estate agents infringed his copyrights by including floorplans of his homes in resale listings. The district

-2-

Case 2:18-cv-04093-BCW    Document 151-1    Filed 01/14/25    Page 2 of 16
Appellate Case: 23-3402    Page: 2    Date Filed: 01/14/2025 Entry ID: 5474397

court[1] granted summary judgment to the real estate agents and associated defendants in these cases because it concluded that their inclusion of floorplans in resale listings was a fair use of the homes' designs. We agree and affirm.

Nearly thirty years ago, James designed a home featuring a triangular atrium and stairs. He built six homes using the design or variations of it, and, over many years, he registered copyrights in the design and its derivatives, depositing photographs and detailed architectural plans with the Copyright Office. He does not appear to have licensed floorplans for any of the homes.

In 2010, a real estate agent named Susan Horak listed one of James's triangular atrium homes for resale. She prepared a floorplan for the home by hand and included it in the listing. The floorplan depicted a top-down, two-dimensional outline of each of the home's floors and rooms, labeled with the names and rough dimensions for each of the rooms. The home sold, and Horak earned a commission, though her listing remained online for years afterward.

In 2017, a real estate agent named Jackie Bulgin listed another one of James's triangular atrium homes for resale. A contractor prepared a floorplan for the home that was similar in format and detail to the floorplan prepared by Horak, as is evident from the copies of the floorplans reproduced in the appendix to this opinion. Bulgin, like Horak, incorporated the floorplan in her listing. Although Bulgin's agency stood to earn a commission if the home sold, the listing was unsuccessful.

James alleges he discovered Horak's and Bulgin's listings online in 2017. According to him, someone could build homes from floorplans like the ones used in their listings, although it appears homes built this way might have the corresponding floorplans without replicating all the features of the full three-dimensional designs that the floorplans simplify.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

-3-

Case 2:18-cv-04093-BCW    Document 151-1    Filed 01/14/25    Page 3 of 16
Appellate Case: 23-3402    Page: 3    Date Filed: 01/14/2025 Entry ID: 5474397

Following his discovery, James and his company, Designworks Homes, Inc., took action. This pair, whom we collectively call Designworks, sued Horak and Bulgin separately, naming associated individuals, entities, or both as defendants in each suit. Designworks alleged that the defendants in these suits, whom we call the agents, directly, contributorily, and vicariously infringed its copyrights in its home designs by using floorplans in home listings. The agents did not access Designworks's architectural plans, and any copyrights in these are not at issue. The agents answered Designworks's complaints and asserted fair use as a defense. They also argued that they were entitled to the protections of § 120(a) of the Copyright Act, which states that a "copyright in an architectural work that has been constructed does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place."

The district court granted the agents summary judgment under § 120(a), but we reversed. *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 805–06 (8th Cir. 2021). We observed, however, that the agents' fair use defense might still succeed. *Id.* at 811. On remand, the district court denied Designworks's motions to reopen discovery for the purpose of exploring the fair use issue, and the parties filed supplemental summary judgment briefs. The summary judgment orders that prompted this appeal then followed.

A fair use defense presents a mixed question of law and fact. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021). We apply the "same standard applied by the district court" in reviewing a summary judgment ruling on fair use, asking whether "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *See United Tel. Co. v. Johnson Publ'g Co.*, 855 F.2d 604, 607 (8th Cir. 1988).

Congress codified the fair use defense in § 107 of the Copyright Act. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Under that section, fair use of

-4-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 4 of 16
Appellate Case: 23-3402   Page: 4   Date Filed: 01/14/2025 Entry ID: 5474397

a copyrighted work is not infringement. To determine whether a use is fair use, we must consider (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes," (2) "the nature of the copyrighted work," (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," (4) and "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. After weighing these considerations in the current factual context, we conclude that the agents' use of floorplans to resell existing Designworks homes was a fair use of the homes' designs.

We start with the first of these considerations, which favors the agents. Whether the purpose and character of a new use of a work favor a finding of fair use depends on whether the resulting "new work merely supersedes the objects of the original creation" or "instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023). "A use that has a further purpose or different character is said to be transformative," though "transformativeness is a matter of degree." *Id.* at 529. A transformative use furthers the goals of copyright by promoting "the progress of science and the arts, without diminishing the incentive to create." *Id.* at 531. If a use is commercial, this weighs against the degree to which it is transformative. *Id.* For the reasons that follow, we think the agents' use of Designworks's home designs was transformative to a degree that outweighs the commerciality of the use and other purportedly countervailing circumstances Designworks cites.

The agents' use of the designs to make and share floorplans was transformative because the floorplans had an informational purpose that the designs lacked. The agents created floorplans from the designs to show the layouts and dimensions of the homes to potential buyers and help them decide whether they were interested in buying the homes at resale. The designs themselves, by contrast, facilitated the construction of the homes for sale and occupation. Use of the designs thus yielded end products with functional and aesthetic benefits, while use of the floorplans

-5-

identified and advertised those products and benefits. This informational purpose of the floorplans was new and went beyond the purpose of the designs. *See Stern v. Lavender*, 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018); *Noland v. Janssen*, 2020 WL 2836464, at *4 (S.D.N.Y. June 1, 2020).

That the agents incorporated the floorplans in commercial advertising counterbalances the transformativeness of their use of the designs only in part. Commercial uses of a work are less favored than noncommercial uses, and we view commercial advertising uses with some skepticism. *See Campbell*, 510 U.S. at 585. But the commerciality of a use is troubling primarily when the use displaces the work or derivative works in the market. Patry on Fair Use § 3:4 (May 2024 update). Then, the use might frustrate the objectives of copyright by reducing the incentive to create new works. Because this concern about market substitution is absent here, we weigh the commerciality of the agents' use of floorplans less heavily than the transformativeness of the use. The agents did not copy advertisements to produce their own advertisements. *Cf. Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058, 1102 (N.D. Ill. 2020). Nor did they use their advertisements to promote the sale of new or otherwise infringing homes in competition with Designworks. *Cf. Rosen v. R & R Auction Co.*, 2016 WL 7626443, at *9 (C.D. Cal. Aug. 31, 2016). They used floorplans for existing homes to resell the homes. Any substitution in the resale market for similar homes is substitution blessed by copyright's first sale doctrine, which allows the owner of a home to resell it "without the authority of the copyright owner" so long as the home was "lawfully made." 17 U.S.C. § 109(a). And any substitution in the market for floorplans is speculative because Designworks has long abstained from that market.

A review of other facts to which Designworks calls attention does not change our view that the purpose and character of the agents' use of floorplans favors a finding of fair use. Designworks emphasizes Horak's failure to take down a floorplan in an online home listing for years after the listing expired, but we do not think this significantly changed the purpose or character of the floorplan's use. Both before and

-6-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 6 of 16
Appellate Case: 23-3402   Page: 6   Date Filed: 01/14/2025 Entry ID: 5474397

after the listing expired, the floorplan informed potential buyers of the layout and dimensions of the listed home. There is no indication it ever had an additional function, nor did this informational function lose its practical value. It is true that the owner of the listed home may not have been looking to resell the home after the listing expired, but that does not mean the owner would have declined a purchase offer at the right price. By showing potential buyers the home's layout and dimensions, the online floorplan made it more likely one of them would make an acceptable offer and thus made the resale market more efficient.

We are also unpersuaded by Designworks's argument that the agents' public use of floorplans weighs against them. Public dissemination of the floorplans did not alter their purpose or character. The floorplans showed information about homes no matter how many people saw them. If anything, wider dissemination of the floorplans brought this information to more people it could benefit. *See Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983). Insofar as Designworks contends that *Sony Corp. of America v. Universal City Studios, Inc.* establishes a categorical preference for private uses, we disagree. 464 U.S. 417 (1984). In *Sony*, the Supreme Court held that home recording of broadcasts for later viewing was fair use in part because the record showed that "private home use must be characterized as a noncommercial, nonprofit activity." *Id.* at 449. The privacy of the use was thus relevant as evidence concerning the commerciality of the use. That is no help to Designworks since we have already considered the commerciality of the agents' use of floorplans here. On the facts before us, the purpose and character of the agents' use of Designworks's designs to make and share floorplans favor a finding of fair use.

We next consider the nature of Designworks's designs and conclude that it weighs slightly against a finding of fair use. The nature of the designs matters because "some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586. Thus, use of a work is less likely to be fair when the work "serves an artistic rather than a utilitarian function." *See Google*, 593 U.S.

-7-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 7 of 16
Appellate Case: 23-3402   Page: 7   Date Filed: 01/14/2025 Entry ID: 5474397

at 20. In evaluating the nature of a work, we focus at least primarily on the portion of the work actually copied. *See* 4 Nimmer on Copyright § 13F.06[A][2] (2024); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013). While the agents copied some artistic expression from Designworks's designs, this does not, standing alone, weigh heavily against a finding of fair use.

Designworks's designs contain some artistry that disfavors a finding of fair use. As do many works, the designs mix creative features, like a triangular atrium, with standard utilitarian features, like rectangular bedrooms. *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 103–04 (2d Cir. 2014). On the whole, the designs are not so utilitarian as to occupy merely the periphery of copyright protection. *See Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 353 (N.D.N.Y. 2016). That is true, though perhaps less so, even of the simplified two-dimensional cross-sections of the designs that the agents copied to make floorplans.

But the nature of the designs carries little weight. The nature of a work has "rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). Although there are exceptions to this generalization, *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985); *Google*, 593 U.S. at 27–29, and each case deserves individualized analysis, the parties identify nothing that makes this case unusual.

Designworks invokes the rule that "the scope of fair use is narrower with respect to unpublished works," *Harper & Row*, 471 U.S. at 564, but we think it a poor fit for the facts. We need not decide, despite Designworks's suggestion, whether Designworks published its designs within the meaning of the word "publication" as defined in the Copyright Act and used in some of its provisions. *See* 17 U.S.C. § 101. Section 107(2) of the Act, the provision stating that the nature of a work is relevant to the fair use defense, does not use the term "publication" or anything like it. Accordingly, courts applying that section "commonly look past the statutory definition" of publication and instead ask whether a use of a work deprives the work's

-8-

Case 2:18-cv-04093-BCW    Document 151-1    Filed 01/14/25    Page 8 of 16
Appellate Case: 23-3402    Page: 8    Date Filed: 01/14/2025 Entry ID: 5474397

owner of control over "the first public appearance of its expression." *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 87–88 (2d Cir. 2014). In this case the answer is no. Designworks built six homes using its designs, and there is no indication it restricted the homeowners' right to open the homes to the public. This sharing of the designs and surrender of control over the public's access to them confirms that the nature of the designs weighs only slightly against a finding of fair use.

Turning to the third fair use consideration, we conclude that the extent of the agents' copying of Designworks's designs does not significantly favor or disfavor a finding of fair use. The question that guides us is "whether the amount and substantiality of the portion" of each of the designs copied by the agents, judged in relation to the design as a whole, were "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586; *Google*, 593 U.S. at 34. They were here because the agents tailored their copying from Designworks's designs to make floorplans to their legitimate purpose of supplying information to potential homebuyers.

The agents could not have achieved their goal of effectively sharing the layouts and dimensions for the homes they were reselling to potential buyers without copying the elements of the homes' designs that appear in their floorplans. The floorplans showed the homes' layouts, dimensions, and virtually nothing else. Even if Designworks were right that the agents copied its designs in their entirety, we would not weigh the extent of the agents' copying strongly in favor of either side given the close fit between the agents' valid informational purpose and their copying. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167–68 (9th Cir. 2007).

In fact, what the agents did was less substantial than complete copying because they reproduced only the top-down layout and dimensions of the designs. Substantiality usually varies with the extent to which copying reproduces distinctive creative expression, *see Harper & Row*, 471 U.S. at 564–65, or material that

-9-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 9 of 16
Appellate Case: 23-3402   Page: 9   Date Filed: 01/14/2025 Entry ID: 5474397

substitutes for the copied work or derivative works. *See Campbell*, 510 U.S. at 587; 4 Nimmer, *supra*, § 13F.07[A][2]. The agents' two-dimensional floorplans omit at least some of the three-dimensional creativity of Designworks's designs, *see Ranieri*, 164 F. Supp. 3d at 353, and they do not substitute for homes built using the designs or for the detailed plans used to build such homes. At most, they might substitute for other floorplans of the designs, but Designworks does not compete in the market for floorplans. While the agents still copied a nontrivial portion of the designs, and we decline to weigh the extent of their copying strongly in favor of a finding of fair use, these facts further persuade us that the extent of their copying does not strongly disfavor such a finding either.

We lastly conclude that the effect of the agents' use of floorplans on the market for and value of Designworks's designs favors a finding of fair use. In weighing this final consideration, we look not only to the extent of the market harm caused by the use but also to whether "unrestricted and widespread" conduct of the same type would result in "a substantially adverse impact on the potential market." *Campbell*, 510 U.S. at 590. Additionally, we consider "harm to the market for derivative works," *id.*, and benefits to the public. *Google*, 593 U.S. at 35–38. The extent of the market harms and benefits is the "most important element of fair use." *Harper & Row*, 471 U.S. at 566. Because fair use is an affirmative defense, its proponent often needs to present some "favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590. On the current record, use of floorplans in home resale listings like the agents' does not harm Designworks in its existing markets, threatens at most speculative harm to Designworks in its potential markets, and likely benefits Designworks outright by increasing the resale value of its designs. Accordingly, the market effects of the use weigh solidly in the agents' favor.

Even unrestricted and widespread use of floorplans in home resale listings would not displace Designworks's products in Designworks's existing markets. Designworks makes homes and home designs, and a floorplan is not a substitute for either. No buyer could use a floorplan in place of a home. A buyer might purchase a

-10-

home advertised with a floorplan in the resale market, but Designworks has no legitimate interest in preventing resales because the first sale doctrine allows homeowners to resell their homes without its permission. 17 U.S.C. § 109(a). As for designs, they contain much detail a floorplan omits. Thus, James testified that he could build homes from various floorplans, but he never testified that he could build them to match the full three-dimensional designs from which the floorplans derived. It seems, as review of the plans for Designworks's designs suggests, that a buyer who wanted to build a home using the designs or derivative designs would need more than the floorplans.

Reliance on the floorplans does not even seem to be a useful shortcut to the preparation of full plans. Construction of a home from the completed plans would likely infringe Designworks's copyrights, 17 U.S.C. § 106(1), and plans that cannot be built have minimal value, no matter how much more cheaply they might be made using floorplans as a starting point. Perhaps in different circumstances builders would risk the consequences of infringement to take advantage of that starting point, but, nearly fifteen years after Designworks floorplans first landed on the internet, there is not even an allegation that any builder has done so here. We therefore view the risk of downstream copying of Designworks's designs by builders as speculative. *Cf. Authors Guild*, 804 F.3d at 229.

Outside Designworks's existing markets, circumstances are no less favorable to a finding of fair use. Though Designworks maintains that unrestricted and widespread use of floorplans in home resale listings will hurt its prospects in potential markets for floorplans used in such listings and for floorplans used in other unspecified ways, we view these potential markets as irrelevant because any harm to Designworks in them is speculative.

We start with the potential market for floorplans used in home resale listings, where Designworks's theory of injury falls flat because it simply repackages its infringement claims. Designworks first assumes that use of floorplans in home resale

-11-

listings is infringing and observes that the agents used floorplans in home resale listings. This is the essence of its infringement claims. It then concludes that the lost opportunity to license floorplans to the agents and others like them tends to negate the fairness of their use. The flaw in this reasoning is so common that it has a name in copyright law: circularity. The lost opportunity to license an allegedly infringing use of a work cannot tilt the fair use inquiry against the alleged infringer because this loss does not distinguish any one allegedly infringing use of a work from another. After all, in every fair use case, a "plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing the very use at bar." *Swatch*, 756 F.3d at 91; 4 Nimmer, *supra*, § 13F.08[B].

Mindful of the circularity difficulty and the folly of allowing purely hypothetical market injuries to influence our assessment of fair use, we credit a plaintiff's assertion of harm in a potential market only if the harm is nonspeculative. This usually means that the market must be "traditional, reasonable, or likely to be developed." *Swatch*, 756 F.3d at 91; *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 325 (5th Cir. 2022). But we do not consider injuries in any potential market unless the plaintiff "would have licensed, not just could have licensed" in that market or the plaintiff refused to license in that market because it sought to increase the value of the work by eliminating the market. *See* Patry, *supra*, § 6:9. And delay in exploiting a potential market will, eventually, constitute a "decision to leave the market untapped." *Id.*; *see also Bell*, 27 F.4th at 325.

Designworks's conduct in the potential market for floorplans used in home resale listings is a textbook example of such delay. Designworks has apparently never licensed floorplans of its designs for use in home resale listings. That period of inactivity includes the nearly thirty years since Designworks created its original design and the more than six years since it sued the agents for using floorplans of the original and derivative designs. If Designworks intended to exploit the market for floorplans used in home resale listings, there was no reason to allow this much time to pass. Designworks does not, for example, suggest that it refrained from licensing

-12-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 12 of 16
Appellate Case: 23-3402   Page: 12   Date Filed: 01/14/2025 Entry ID: 5474397

such floorplans until licensing became practical. If Designworks instead intended to shut down the licensing market to increase the value it got from its designs in other markets, it has not said so. In these circumstances, any harm to Designworks in the potential market for home resale listing floorplans that would follow from widespread use of such floorplans is speculative. We give it no weight.

For similar reasons we give no weight to harm Designworks might suffer in the potential markets for floorplans used outside of home resale listings. Designworks does not appear to have licensed, intended to license, or tried to prevent the licensing of such floorplans any more than it licensed, intended to license, or tried to prevent the licensing of floorplans used in home resale listings. Even if third parties were using the agents' floorplans outside of listings for existing homes, an assumption for which there is no evidence, any injuries Designworks might suffer in the potential markets for such floorplans would be as speculative as the injuries it might suffer in the potential market for floorplans used in listings for existing homes.

Though the circumstances just summarized convince us that unrestricted and widespread use of floorplans in home resale listings will cause Designworks no cognizable harm, we would be remiss if we did not mention the benefits that the use of floorplans offers Designworks. *See Google*, 593 U.S. at 35–38. Because putting floorplans in listings for existing Designworks homes makes it less costly for potential buyers to discover the homes' layouts and dimensions, it tends to increase the number of potential buyers willing to consider buying the homes. The result is that the homes should, on average, resell more quickly or for a higher price than they would absent the use of floorplans. This benefits Designworks because it can capture a share of the price or liquidity premium by charging more for its designs and homes in the initial markets for these products. A buyer in the initial markets expects homes built using the designs will ultimately return the price or liquidity premium at resale and is therefore more likely to pay the higher charge.

Considering the market benefits to Designworks from unrestricted and widespread use of floorplans in home resale listings and the absence of

-13-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 13 of 16
Appellate Case: 23-3402   Page: 13   Date Filed: 01/14/2025 Entry ID: 5474397

nonspeculative market harms to Designworks from such use, we conclude that the effect of such use on the market for and value of Designworks's designs decidedly favors a finding of fair use.

Having now reviewed the enumerated statutory considerations that guide our assessment of fair use, we hold that the agents are entitled to judgment on their fair use defenses. Though they do not uniformly favor the agents, these considerations favor the agents on balance. We note, too, that our holding comports with the opinions of leading commentators, who have endorsed, or hinted at endorsing, a finding of fair use in these very cases. Patry, *supra*, § 3:4; 1 Nimmer, *supra*, § 2A.09[B][4][c] & n.286.17.

Our finding leaves only one loose end to tie up: Designworks's demand for further discovery concerning fair use, which we reject. After we reversed earlier judgments for the agents and remanded with a note that the agents' fair use defenses remained in play, Designworks moved to reopen discovery concerning fair use, and the district court denied the motions. Designworks says this decision was a mistake, but we are not inclined to disturb it because Designworks has not developed any argument for doing so.

Reviewing the merits of the decision nonetheless, we see no abuse of discretion in the district court's refusal to reopen discovery. Designworks identifies nothing it might learn through further discovery that it did not and should not have been expected to learn during the discovery period that already closed. Without more, the fact that we remanded to the district court after the close of discovery while leaving the fair use issue open hardly justifies additional discovery. *See Level 3 Commc'ns, L.L.C. v. City of St. Louis*, 540 F.3d 794, 796–97 (8th Cir. 2008); *Ty, Inc. v. Publ'ns Int'l, Ltd.*, 2003 WL 21294667, at *7 (N.D. Ill. June 4, 2003). Fair use, we note, has been at issue since the pleading stage.

-14-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 14 of 16
Appellate Case: 23-3402   Page: 14   Date Filed: 01/14/2025 Entry ID: 5474397

This exhausts Designworks's challenges to the district court's judgments. For the reasons we have stated, none persuades us that the district court erred in its conclusions.

Affirmed.

_____

-15-

Case 2:18-cv-04093-BCW   Document 151-1   Filed 01/14/25   Page 15 of 16
Appellate Case: 23-3402   Page: 15   Date Filed: 01/14/2025 Entry ID: 5474397

# APPENDIX

## Horak Floorplan



## Bulgin Floorplan





-16-

Case 2:18-cv-04093-BCW    Document 151-1    Filed 01/14/25    Page 16 of 16
Appellate Case: 23-3402    Page: 16    Date Filed: 01/14/2025 Entry ID: 5474397